so and we have on by video Mr. Burns is appearing by video and then we have is it Lindsay also appearing in person can you hear us okay Mr. Burns yes your honor all right let us know if you have any difficulty hearing anything and are you ready I am all right go ahead morning your honors Todd Burns on behalf of Mr. Eggleston I would like to begin by thanking the panel for so quickly accommodating my request to appear remotely and I would be remiss if I didn't also mention that members of the court staff and the clerk's office were especially responsive and and helpful and I'm deeply grateful for that turning family members doing better but I know that it's a great situation for you thank you turning to the argument my hope is to reserve three minutes for to begin with the issues surrounding the preclusion of the third party culpability defense the government doesn't dispute that there was adequate evidence to support the third party culpability defense and it also doesn't dispute that the instruction given precluded that defense as a matter of fact in the pretrial filing government counsel was was fairly candid in indicating that that is exactly what she sought to preclude the defense and that is is exactly what occurred but what the government says on appeal is it doesn't matter because defense counsel was able to argue the defense during closing that's not factually correct defense counsel was fully aware as you can see from his pretrial filings that if the instruction were given that the defense would be precluded and his instruct is his argument following the giving the instructions was consistent with that he did not argue third party culpability defense but even if he had it would be irrelevant because the instruction precluded that defense and the jurors are of course presumed to follow the instructions and the error in this regard is the structural error under this court's opinion in Miguel basically to shut down just trying to decide though because as I read it the point of the instruction is to make sure the jury realizes that it's their job to decide that the government has proved that your client or this that that particular defendant is guilty and it seems like that in this case where it would make sense to give that given the competing theories that either the defendant Cooper or the defendant and Cooper knew about the drugs so if the instruction isn't given I'm not sure when it would be so is it your position it should never be given well I think it's possible that another instruction could be given that would take into account the facts and circumstance of this case but but this instruction is not that one it says possible guilt of others it's not a there's influence your decision in any way in any way and the parties made clear to the court their understanding that if this instruction were given it would shut down the third party culpability defense and I think justifiably so based on the language and the Sixth Circuit which this is a model instruction from the Sixth Circuit in the commentary the model instruction they specifically say caution against using this instruction if a third party culpability defense is given so I'm not saying that there isn't some instruction they could take into account that you know just because someone else is guilty that alone is not a reason to quit but this instruction does more than that it says don't consider the guilty explain how mr. Cooper's guilt would completely absolve mr. Eggleston of guilt well the defense was that mr. Eggleston had been set up that he had that mr. Cooper given mr. Eggleston the bag and mr. Eggleston didn't know there were drugs in the bag so it would absolve him from from that perspective that he didn't know he didn't have knowledge the central issue in this case but he said he packed the bag with his homie mr. Eggleston did so that's correct but that's somewhat a vague statement they could have been both in the hotel room packing at the same time they could have packed some things together not not clear what that meant so you talked about the commentary and I looked at the 2025 committee commentary on the Sixth Circuit instruction and it specifies that a panel of the Sixth Circuit in an unpublished case held that it was not error to give the pattern instruction 2.0 1 3 without modification even though the defendant argued someone else committed the crime is it your position we should ignore that commentary or should we distinguish that case well I guess that multiple answers to that I mean of course an unpublished opinion even from from this court is not binding on this court and that's an unpublished opinion from on the Sixth Circuit and yeah I think really what comes in the commentary it is in the commentary right I don't know that the commentary is adopting it or if they're noting it I'm afraid I have not looked at that updated commentary but I think what I would come back to is this court's case law in Vallejo and in and Crosby which says look if there is some evidence any evidence even if it's speculative or or fairly light evidence that the the defense the defendant should be allowed to present that evidence to the jury and have the jury proceed on it and again the government hasn't really argued that the government hasn't argued that this opinion that this instruction precluded the defense they've as much as acknowledged that they just said doesn't matter because defense counsel was able to argue the defense but the standard of review here is abuse of discretion so how can we find abuse of discretion well it it is an abuse of discretion for the district court to misstate the law and I believe this is a misstatement of the law you can't say that don't let the possible guilt of others influence your decision anyway because the guilt of mr. Cooper the idea that mr. Cooper may be the one who knew that the drugs were in the bag and set up mr. Eggleston is certainly something that could raise a reasonable doubt with the jurors as I said under this court's case law and Miguel I believe this is structural error even if not it would be impossible to say that this is harmless much less harmless beyond a reasonable doubt this is the core of the defense defense opened on it and then couldn't close on it after one hour the jurors asked to see surveillance video which indicates that they had some interest in mr. Cooper and what his involvement was and what the interactions were between him and mr. Eggleston they deliberated for four hours and what was a relatively short case especially when you take out you know jury selection and whatnot from the two-day trial the government emphasized the instruction in closing and the government really used Cooper then as a one-way ratchet to they said oh Cooper is this layoff guy who's part of the organization is keeping an eye on the drugs and could use that to convict mr. Eggleston whereas mr. Eggleston couldn't present on his third party culpability defense I still don't see how it's abuse of discretion if it's consistent with the Ninth Circuit jury instruction on on absent co-defendants I mean if it's if it's consistent with our jury instructions in this situation well I'm not sure that it is consistent with that the government didn't argue that I have not looked at the absent co-defendant instruction in a little bit but I assume that it would not say in a case in which there's a third party culpability defense being presented that you can't consider the guilt of others in in any way if I recall correctly the government and what we can ask government counsel this in the proposed jury instructions they did reference the missing witness or the missing co-defendant instruction I could be wrong about that but I do have a memory that so I think they did raise it to the district court I agree with you mr. Burns it's not identical but I do think it that as an analogy was presented to the district court in the charging to are the I was a charging conference or was the proposed instructions that were provided I think it wasn't there well and again I I don't dispute that there isn't some formulation of instruction here that could take into account that hey you shouldn't acquit the person just because someone else is guilty you know that's I don't think that's impermissible but to say you can't take the guilt of someone else into account in any way is that that goes much farther than the missing it witness instruction and it is a especially problematic impermissible error in the of his case because it prevented defense counsel from from presenting the defense he did not in closing argue the defense and everyone seemed to understand that that was the thrust of the instruction that was what government argued counsel argued for and asking for the instruction and it was certainly what defense counsel understood and that that was actually in the pretrial submissions of the proposed jury instructions everyone was on the same page as to the of of the instruction if there are no more questions on that I'd like to turn to the briefly to the jewel willful blindness instruction there is insufficient evidence on either of the elements of that instruction and beginning with the first one whether or not the defendant believed subjectively to a high degree of probability that there were drugs in the bag the government says well this keyboard is packed on top of the keyboard box and and that should have that should have created such a subjective belief first of all it's not clear how the keyboard the keyboard box were packaged because the person that unpacked the bag TSA officer Martinez couldn't recall how they were packaged but even setting that aside there's no evidence that Mr. Eggleston saw that keyboard and keyboard box and saw the box the keyboard is out of the box and subjectively believe that that there was a great probability that there were drugs in the box there's no evidence he believed that subjectively zero but even if you were going to look at it objectively which is not the test I don't think you could say a reasonable person who sees that someone's packing a keyboard box and a keyboard outside the box would jump to the conclusion that oh there must be drugs in the box that's a big leap and that's objective and that's of course a negligence or recklessness standard which is exactly what the court you know in the dissents in these cases is caution that the jewel should not lead into lessening the the knowledge standard to something along the lines of recklessness or negligence but our court on bank in area said that there's no risk of it kind of being watered down to a negligence standard well they said there's no risk if it's given in the right circumstances that is where there is evidence that subjectively the defendant believed that there was a high probability there were drugs in there and then avoided knowing it basically because you can have to you can have the defendant can go two ways I think the prosecutor argued actual knowledge but then they backed it up with the blindness but the court went when you're a judge and you have our presented with instruction there has to be if there has to be some evidence of that theory of the case and there was some evidence of that so how could that be error for the court to give it there was no evidence that he subjectively believed that there might be drugs in the in the box if you compare this to example for to jewel the original case there is all sorts of stuff where he says look I knew there was a department but if I couldn't find anything there I figured the people at the border couldn't find it I knew the person was asking me to do this was sketchy I knew it was a dubious situation same thing in cases like Barron either was there was a lot of in Barron they said it's not even appropriate to give a jewel instruction well I think the government presented evidence that a jury could rationally find to be willful blindness it's it's got two elements for that and the government presented evidence that Engelson carried and checked the bag containing drugs paid the bag fee using a prepaid card falsely denied having checked the luggage before admitting that he did check the bag and claim to pack the bag with his homie so and then other evidence showed that the bag contained one of Eggleston's receipts the Eggleston received a text message from I don't know the the emoji with mama said call when you get in and the bag contained almost three kilograms of fentanyl so I mean there just has to be some evidence of the willfully blind and I think there was some evidence there but as this court said in Alvarado and Barron and examining similar you know suspicious circumstances those facts just go to knowledge they do not show that the defendant subjectively believe there was a high probability there were drugs in there and then avoided confirming or dispelling that can that suspicion there's just no evidences of his subjective belief on the other hand Alvarado and Barron say the jury could infer that he knew based on the suspicious circumstances but there's there's no evidence of his subjective belief and then there's no time for rebuttal you're down I was only saved three minutes but I was I was answering your question okay yes okay so I'll give you two minutes all right we'll split the difference all right all right thank you all right we'll hear from the  good morning may morning can you keep your voice up may it please the court Lindsay all sup for the United States the plaintiff a Peli in this matter the ultimate question in this case is whether there is substantial evidence of guilt including but not limited to the video evidence that shows the defendant Jermaine Eggleston address your opposing counsel's argument that it is isn't it a little bit misleading to say that you can't consider the guilt of others in any way didn't that preclude mr. Eggleston from being able to argue that it was all mr. Cooper and mr. Eggleston didn't have knowledge and have any reasonable probability to know that there were narcotics in the bag as reflected in in the record or the trial record that is more specifically the defendant was actually able to put forth his defense and to identify Zachary Cooper as the person who possessed not only the bag but the narcotics in that bag defense counsel was unequivocal in closing that the defendant Jermaine Eggleston was not the owner of the bag or any of those items argued that but if the judge gave them an instruction that they had to follow that said you could not consider the guilt of others quote in any way end quote doesn't that somehow negate the arguments that defense counsel was trying to make respectfully no your honor and I would just draw the court's attention also to the excerpt of record 426 it's omitted from defendants briefs however mr. Seiden defense counsel at the time actually agreed with the modification of that instruction in the court said and I quote speaking of proposed instruction 31 is this the one that I reserved a decision on so maybe whether anyone else should also be prosecuted for the crime mr. Seiden responded I'd like that language judge the court then responded all right I think that will be all of the changes then so at that point in time defense counsel counsel agreed with the modification and agreed if someone gives a closing argument and all their cross is directed at trying to pin the guilt on someone else and then there's a legal jury instruction the court is instructing the jury to consider and has they have to apply it during their deliberation says you cannot consider it in any way whether other people are guilty your honor the instruction given that there was also this idea of joint possession the instruction would not have precluded for example jurors thinking that Zachary Cooper was also culpable for this crime the instruction as phrased was just very clear just because Zachary Cooper may also be culpable that does not mean that Jermaine Eggleston is not also culpable but the fact that defensive counsel agreed with this modification and instruction is relevant I'm just given the court's review and so are you saying it's relevant because then it's plain error review it's not an objection or what I don't quite understand what you're saying are you saying they didn't object I'm saying that defense counsel agreed with the instruction at that time and therefore similar to for example is cross-examination of detective Woodard how that was invited error this too could also be considered invited error it's it was a jury instruction that defense counsel effectively stipulated to agreed to following the conference with government counsel when we were discussing the jury instruction part of it I think you're you're conflating that a little bit but if you're saying they didn't object because they agreed to the modified then that changes the standard of review right that is correct your honor so not really invited error more plain error or what are you saying well on on either on either sort of vantage point the government would submit that there was no plain error or if there was an error it was simply harmless but the fact again that is your position what is the standard of review what they're they're now saying that that was an error so what is the standard what is our standard of review standard of review would be it would be a plain error review your honor because they agreed to the modified instruction correct and then you're saying no plain error but even if plain error harmless error correct your argument is okay and if I could just jump in I want to make sure we're all talking about the same thing the language I think at issue here I'm looking at er 440 is do not let the guilt of others influence your decision in any way and then we've heard like don't consider it that's actually was nothing I've heard people say was don't consider it that actually was not the instruction given right the instruction I read is the one at issue correct correct okay because I don't see the word I don't see the word consider I see it's not I see on the top where there anyone else should have been also prosecuted and convicted for this crime is not a proper matter for you to consider that seems to be pretty standard language that's similar to our Ninth Circuit instruction when you have a co-defendant who drops out of the case I think the problem I'm not saying it's a problem but the problematic is that last sentence do not let the possible guilt of others influence your decision in any way what's your best response since that's the language I think that's that is the alleged problem what's your response to why that sentence is okay ultimately the instruction is given and given what defense counsel was permitted to argue during closing would have led the jury to the ultimate conclusion that even if Zachary Cooper was responsible that does not mean that Jermaine Eggleston also could not have been responsible and given the jury's ultimate verdict they appear to have agreed essentially that Jermaine Eggleston to some extent was involved in the trafficking of narcotics whether he jointly possessed them with the Zachary Cooper or whether he possessed them on his own and Zachary of that instruction was quite clear that the jury should not get bogged down in this idea of essentially the fact that Zachary Cooper was not prosecuted for this crime because that is something that defense counsel elicited during cross-examination of detective Woodard and tried to poke holes in the investigation and to suggest that just because Zachary Cooper too was not prosecuted for this crime somehow mr. Eggleston would have been innocent and that was not necessarily the case if I made that question with regard to agent Paris's testimony when he's talking about that specific text that judge Callahan read into the record he gives the interpretation of what the courier who received that text would have understood that text to mean he doesn't say most couriers which is what you're required to do under DS so how I guess you know that you you point to language in Paris's testimony about other topics where he says most couriers but with regard to that text it's specific to mr. Eggleston so why why would that be permissible here so it's important to note that special agent Paris did not attribute any sort of intent to mr. Eggleston specifically his testimony was keyed in on what a typical courier or in some reference in some instances what a typical mule though he said that they were very rare and hard to come by made you in a certain situation or instance I don't believe that you can evaluate his one answer in a vacuum it should be collectively with the entirety of his testimony and throughout his testimony he repeatedly qualified that in most instances or in sometimes couriers and or in some instances mules will take certain action or will not take certain action but for this specific text message and it the government would respectively submit that it is permissible under Diaz special agent Paris did not say specifically that the detent the defendant must have been a courier because he received that text message his answer was that someone receiving that text message likely would have known that they were transporting narcotics or drugs and it's also important to note that special agent Paris did not denote for example the specific kind of narcotic or drug which further sort of separates his testimony from the defendant specific actions in this case and ultimately left this for something for the jury to decide I would note and draw the court's attention to the fact that in closing defense counsel actually argued this point and said what does you know this text mean the expert says he doesn't know he says it's a code all right what's the code but he couldn't tell us what's the key what's the crypto I don't know and so defense counsel is not even interpreting the way that special agent Paris answer that question to attribute intent to the defendant Mr. Eggleston specifically based on defense counsel's argument it was an open question it could have been interpreted one way or it could have been interpreted another way and because it was an open question in a matter ultimately for the jury to decide special agent Paris as the expert was not telling the jury what they should believe his testimony should be considered under Diaz permissible under Diaz when agent Woodard said that mr. Eggleston wasn't surprised when he was detained was that post arrest pre Miranda silence or was that silence at the time of arrest so as an initial matter I would also draw the court's attention to the fact that repeatedly whether it be in direct examination of the witnesses opening closing and rebuttal the government never referred to silence the government repeatedly referred to defendants demeanor which arguably is permissible well I guess though but generally speaking I was a trial judge a really a long time ago and I was a trial attorney even longer time ago but that being said generally whether a surprise would be like that's not really you could describe someone's demeanor but that's kind of an emotion and generally when witnesses would try to describe how someone else felt there would be an objection that that would be hearsay you can't describe how someone else feels so surprise is a feeling in my view so why would why wouldn't it be objectionable as hearsay I don't I don't know why the prosecution had to do all of that anyway I'm I mean I don't know what a surprise look like I bet someone might have that on video I don't know what does it look like or well it is now yeah but but you know like you would say if someone was whether someone's upset you could testify someone they were crying and then the jury could decide what that crying meant were they tears of joy were they tears of upset or whatever but I don't know why the prosecutor needed to do that what a surprise look like well I would say two points your honor your comments as to whether or not government counsel should have introduced this evidence I think goes to the government's ultimate point that the evidence in this case was so overwhelming that even excluding that testimony and excluding reference to the defendant's lack of surprise and calm demeanor the defendant mr. Eggleston still would have been convicted was trying to say so if he didn't seem surprised about being arrested then that would be post arrest and under Ninth Circuit precedent that's problematic right yes your honor and the government's position is that this was not a referral or reference to his post arrest demeanor it's notable that throughout the course of detective Woodard's testimony government counsel continued to ask him about defendants demeanor it wasn't just this one question about how he was responding at the time he was arrested detective but that surprise happened before he got arrested right correct however considering the record before the jury at that time you have an individual who has now had to be asked three times about whether or not he checked a bag that he is on video obtaining a prepaid credit card for in checking while another individual appears to sort of be shadowing I'm still not clear regardless of whether it's silence or demeanor just let's concede it's demeanor was that demeanor at the time at the moment of arrest or was that after arrest the government's position is that the demeanor questions on direct for detective Woodard continued through the interview and up until the time of there was no reference to his post arrest demeanor okay because I think in your brief you call it a post arrest pre Miranda silence I believe that either way even even if it was post arrest there still appears to be some sort of gray area but at bottom the references to the defendant's demeanor and it's notable that there were no references to his silence to the contrary government counsel tried to get defense counsel to get away from referring to his post Miranda silence it was all about the fact that the defendant did not appear to be emotive or surprised at the fact that he was being confronted about a bag that he had checked and that ultimately went to this idea of knowledge someone who believes that they just checked a bag full of clothes and did so for a which is what defense counsel argued during opening and closing would have quickly pointed to the person that they had checked the bag for Zachary Cooper the individual that the defense identified as the true owner of the bag and the drugs in it was present at the gate with defendant had purchased defendants ticket to LA and his accommodations in LA he absolutely would have been able to when first asked by detective Woodard if he had checked a to point to Zachary Cooper and to say oh that's his bag ask him about it the defendant did not do that and so what the government was looking to do was to extrapolate meaning from defendants pre-arrest pre Miranda interview where he had a calm demeanor how do we distinguish Alvarado because the facts on point with respect to silence yeah you say that in your brief that it's factually distinguishable don't explain how if we think the facts are the same are there other ways that we should distinguish Alvarado if so what are those what I mean may I may I inquire like the factual distinctions that the speaking of is it of timing or you don't get to ask the court questions I apologize actually distinguishable but you didn't explain how so I'm actually asking you if you know what were you thinking when you made that and I'm sorry I don't know who wrote the brief but you know what was the government thinking when it made that assertion yes facts are different sure honor and I different are there other ways that we should be thinking about that case yes I apologize I just wanted to best answer your question so the key distinctions in this case as far as defendant silence truly are the timing it's the timing of when he was told about the drugs it's and then the fact that the arrest happened after that and subsequently with defense counsel's reference to the post Miranda post arrest silence so if I may I would put that into sort of three separate buckets there's the timing at the gate before he was arrested where he is actively speaking with detective Woodard engaging with him telling him that he packed I'm sorry I'm more interested in the jewel issue with regard to that that question okay yeah thank you and I know we're running out of time so so do you have any additional questions no no thank you all right we've taken you over so that concludes your time all right so since we took the prosecution the government a bit over I'll give you three minutes for rebuttal mr. Byrne thanks you're saying thank you your honor regarding government counsel statement that testimony that the defendant was calm or not surprised when arrested is permissible that's clearly wrong Flaherty Gomez on bonk opinion makes absolutely clear that that's incorrect and they're really there may have been some of the violations there that the government could try to you know slice an onion on but some of them are so blatant including an opening when he was arrested he didn't seem surprised repeatedly their statements and during direct during Woodard's direct before there's any cross that he didn't seem surprised when he was detained that there was this long conversation this conversation at the gate they described that culminated in the officers coming up to put cuffs on him and that he didn't he didn't seem as surprised or resist or whatever during that period of time all the way through closing it's just they're depending on how you count them there are ten or more and some that I just mentioned are just blatant you know including detective Woodard saying I'm ran the eyes of me declined to speak I mean there's there's a slew of them and they're not really close defense counsel he walked right into you know but that you know some there's some invited error there I mean in terms of when you open the can of the Pandora's box as you know we all know then other stuff can come in that couldn't come in before and there was clearly a line of questioning defense counsel took the officer down that I think opened up a can of a can of what whatever you want to call I would say it's more fairly characterized is that the officer and direct had done this damage by what he had said and defense counsel was trying to clean that up and the officer was having none of it was going farther down that road culminating in I'm ran diced him and he declined to speak but you know the opening and the direct came before that and the and the violations during the repeated violations during the government's closing rebuttal closing are entirely independent of that I'm going to the the missing witness instruction you know your honor could you address harmless harmless error because I think that is a hurdle that you have to overcome on on all the issues effectively right on the jewel issue the amendment so can you address that because there does seem to be substantial evidence against mr. Miguel the third-party culpability the preclusion of that defense that is a structural error but even if the court was going to look at harmless error you know all these errors pretty much are synergistic they affect each other they have a cumulative weight and when you look at the fact that the jury was out for four hours and what was probably a case in which there wasn't much more time spent on that on evidence the fact that they asked to see the video that Cooper was in and the the substantial evidence supporting that Cooper may have given this bag to to mr. Eggleston and it was his things in it because the clothes didn't fit mr. Eggleston I think all those you know all those errors interact with each other and so to say it's harmless after how long the jury was out and what they seem to be focused on I just don't think that the can get there all right we've taken you over the three if my colleagues don't have any additional questions just take 30 seconds to wrap up if you would thank you I would just like to finish with the the missing witness thing I was trying to do some quick witness some quick research here while listening I went to the the instruction the government decided which appears to be dismissal charge against the defendant then I looked at dismissal charge against a co-defendant 2.15 and it just that nice circuit model opinion just does not fit these circumstances and just does not go as far at all as the instruction was given with that I'm done thank you all right thank you both for your helpful argument in this matter the case will stand submitted and court will be in recess till tomorrow at 9 a.m. thank you you for chill stand and recess until 9 a.m. tomorrow morning
judges: CALLAHAN, OWENS, KOH